# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| NORTH CAROLINA ALLIANCE FOR RETIRED AMERICANS,<br><br>Plaintiff,<br><br>v.<br><br>ALAN HIRSCH, in his official capacity as Chair of the State Board of Elections, JEFF CARMON, in his official capacity as Secretary of the State Board of Elections, STACY EGGERS IV, in his official capacity as Member of the State Board of Elections, KEVIN N. LEWIS, in his official capacity as Member of the State Board of Elections, SIOBHAN O'DUFFY MILLEN, in her official capacity as Member of the State Board of Elections, KAREN BRINSON BELL, in her official capacity as Executive Director of the State Board of Elections,<br><br>Defendants. | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>Case No. 1:23-cv-837 |

Plaintiff North Carolina Alliance For Retired Americans ("the Alliance"), by and through its undersigned counsel, files this Complaint for Declaratory and Injunctive Relief against Defendants, the members and executive director of the North Carolina State Board of Elections ("NCSBE") (collectively, "Defendants"). In support of its Complaint, the Alliance alleges as follows:

## NATURE OF THE CASES

1. The Voting Rights Act ("VRA") prohibits states from preventing otherwise eligible voters from voting for President and Vice President based on how long they have resided in the state before election day. And the U.S. Constitution prohibits such requirements in *all* elections.

2. Section 202 of the VRA is explicit: "No citizen of the United States who is otherwise qualified to vote in any election for President and Vice President shall be denied the right to vote . . . in such election *because of the failure of such citizen to comply with any durational residency requirement of such State or political subdivision*." 52 U.S.C. § 10502(c) (emphasis added).

3. Likewise—regarding *all* elections—the United States Supreme Court has held that "[d]urational residence requirements" that "completely bar from voting all residents not meeting the fixed durational standards" deprive voters of the fundamental right to vote and impinge on the fundamental right of interstate travel. *Dunn v. Blumstein*, 405 U.S. 330, 336, 338 (1972).

4. To be sure, both the VRA and the U.S. Constitution allow states to impose short, pre-election *registration* requirements, and to limit registration and voting to bona fide residents. Specifically, the VRA authorizes registration deadlines up to 30 days before a presidential election. 52 U.S.C. § 10502(d). The U.S. Constitution allows short, pre-election registration deadlines where "necessary to

permit preparation of accurate voter lists." *Marston v. Lewis*, 410 U.S. 679, 680–81 (1973). And states are entitled to limit registration to voters who are bona fide residents. *Dunn*, 405 U.S. at 351.

5. But a *registration* requirement is different from a pre-election *durational residency* requirement, which the VRA absolutely prohibits in presidential elections, 52 U.S.C. § 10502(c), and which impinges on fundamental rights to vote and travel, with no adequate justification, in all elections, *Dunn*, 405 U.S. at 343–60. Both the VRA and the U.S. Constitution protect voters from being denied the fundamental right to vote simply because they moved to another state shortly before election day if they otherwise comply with the state's registration deadlines and other requirements.

6. North Carolina law violates these federal protections by imposing a pre-election durational residency requirement that is longer than the registration deadline, and that therefore prevents voters who could otherwise lawfully register and cast ballots from doing so just because they moved into the state too recently. This requirement applies an arbitrary residency requirement to deny voters their right to participate in elections in their new domicile.

7. Specifically, as an eligibility requirement for voting, North Carolina requires that a voter has "resided in the State of North Carolina and in the precinct in which the person offers to vote for 30 days next preceding an election." N.C. Gen.

Stat. § 163-55(a); *see also* N.C. Const. art. VI, § 2, para. 1 ("Any person who has resided in the State of North Carolina for one year and in the precinct, ward, or other election district for 30 days next preceding an election, and possesses the other qualifications set out in this Article, shall be entitled to vote . . . .") (collectively, the "Durational Residency Requirement").[1]

8. North Carolina law also requires voters to attest under penalty of perjury that they have resided in the state for at least 30 days before the date of the election. *See* N.C. Gen. Stat. § 163-82.4(c)(1) (requiring voters to attest to meeting the state's durational residency requirement on their voter registration form). And North Carolina law includes no exception for presidential and vice-presidential elections.

9. These laws flatly violate both the VRA and the U.S. Constitution.

---

[1] North Carolina enforces its constitution's 30-day precinct residency requirement but not its one-year state residency requirement, which has been held unconstitutional. *See, e.g.*, *Qualifications to Register to Vote*, N.C. STATE BD. OF ELECTIONS, available at https://www.ncsbe.gov/registering/who-can-register (accessed Oct. 2, 2023) (instructing that North Carolina residents must have resided in the state for at least 30 days prior to election day to be qualified to register to vote); *Andrews v. Cody*, 327 F. Supp. 793, 795 (M.D.N.C. 1971), *aff'd*, 405 U.S. 1034 (1972) (holding North Carolina Constitution's one-year durational residency requirement unconstitutional as applied to right to vote in local elections); *see also Dunn*, 405 U.S. at 348–49 (invalidating Tennessee's durational residency requirement of one year in State and three months in county, where registration cutoff was 30 days before election). Accordingly, references herein to the North Carolina Constitution's Durational Residency Requirement refer to the 30-day durational residency requirement only.

10. To ensure that North Carolina voters, including the members and constituents of the Alliance, will not be denied their right to vote in violation of the VRA and the U.S. Constitution, the Alliance seeks an order from this Court declaring the Durational Residency Requirement unlawful and enjoining its enforcement because it: (1) violates Section 202 of the VRA, and (2) violates the First and Fourteenth Amendments of the U.S. Constitution.

## JURISDICTION AND VENUE

11. Plaintiff brings this action under 42 U.S.C. §§ 1983 and 1988 to redress the deprivation under color of state law of rights secured by federal law and the U.S. Constitution.

12. This Court has original jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1343 because the matters in controversy arise under the Constitution and laws of the United States.

13. This Court has personal jurisdiction over Defendants, who are sued in their official capacities only.

14. Venue is proper in this Court under 28 U.S.C. § 1391(b) because (1) all Defendants are residents of North Carolina in which this judicial district is located, and (2) a substantial part of the events giving rise to Plaintiff's claims occurred in this judicial district.

15. This Court has the authority to enter a declaratory judgment and provide permanent injunctive relief pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201–2202.

## PARTIES

16. Plaintiff North Carolina Alliance for Retired Americans ("the Alliance") is a 501(c)(4) nonprofit social welfare organization incorporated in North Carolina. It is a chartered state affiliate of the Alliance for Retired Americans, a nationwide grassroots organization with more than 4.3 million members. The mission of the Alliance and its nationwide affiliate is to ensure social and economic justice and full civil rights for retirees, with particular emphasis on safeguarding their right to vote. The Alliance has approximately 52,000 members across North Carolina, including thousands of members in this judicial district, and new members are constantly joining its ranks. As a result, it is imperative for the Alliance that its members who move to North Carolina and intend to make the State their new domicile are entitled to vote in the elections that matter to them and will affect them as residents.

17. The Durational Residency Requirement threatens both the Alliance's members' voting rights and the Alliance itself, as an organization. First, the Durational Residency Requirement harms new members of the Alliance who move to North Carolina within the month leading up to any federal election. New members

- 6 -

Case 1:23-cv-00837-WO-JLW   Document 1   Filed 10/02/23   Page 6 of 20

join the Alliance's ranks each month, including in the month before each federal election, as North Carolina is an especially popular state for relocating retirees. Because of the Durational Residency Requirement, such members—who would otherwise vote in North Carolina—will be unable to do so.

18. For the same reasons, the Durational Residency Requirement directly threatens the Alliance's mission, which relies on the electoral engagement of its members. By systematically preventing many of the Alliance's members from voting in the first year of their move, the Durational Residency Requirement undermines the Alliance's get-out-the-vote work in North Carolina and its advocacy work on other public policy issues that are critical to its membership, including the pricing of prescription drugs and protecting benefits from Social Security, Medicare, and Medicaid, making the Alliance less effective in furthering its mission than it otherwise would be, and requiring it to spend additional resources that it would otherwise spend in other ways.

19. Defendants Alan Hirsch, Jeff Carmon, Stacy Eggers IV, Kevin Lewis, and Siobhan Millen are sued in their official capacities as Members of the North Carolina State Board of Elections ("NCSBE"). NCSBE is the supervising entity for elections in the state. N.C. Gen. Stat. § 163-22. It is empowered to promulgate "reasonable rules [or] regulations with respect to the conduct of primaries and elections" that are consistent with North Carolina's Election Laws, and it must

"compel observance of the requirements of the election laws by county boards of elections and other election officers." *Id.*; *see also id.* § 163-33(1), (12) (NCSBE is also authorized to establish rules, orders, and directives, as necessary for the guidance of election officers and voters, with which county boards must comply). The NCSBE shall also determine "the form and content of . . . [all] other forms to be used in primaries and elections," and "shall furnish to the county boards of elections the registration application forms" to be used by voters. *Id.* § 163-22(e). The members of the NCSBE, personally and through the conduct of their employees, officers, agents, and servants, act under the color of State law at all times relevant to this action.

20. Karen Bell is sued in her official capacity as Executive Director of the NCSBE. The Executive Director is the chief state elections official. *Id*. § 163-27. The Executive Director leads the NCSBE, and, as the chief state elections official, is responsible for administering elections. *Id.* § 163-278.21. The Executive Director is also tasked with supervising the county boards of elections and is authorized to approve certain county-level policies. Executive Director Bell, personally and through the conduct of her employees, officers, agents, and servants, acts under the color of State law at all times relevant to this action.

- 8 -

Case 1:23-cv-00837-WO-JLW   Document 1   Filed 10/02/23   Page 8 of 20

# STATEMENT OF FACTS AND LAW

## I. North Carolina state law requires voters to reside in the state for at least 30 days before the election in which they seek to vote.

21. North Carolina imposes a clear durational residency requirement on voters who seek to vote in the state.

22. Under state law, a voter is "qualified to vote in the precinct in which the person resides" if that voter meets several criteria. First, the voter must have been born in the United States or naturalized. N.C. Gen. Stat. § 163-55(a). Second, the voter must be at least 18 years old. *Id.* Third, the voter cannot be disqualified from voting for being adjudged guilty of a felony. *Id.* Finally, the voter must have "resided in the State of North Carolina and in the precinct in which the person offers to vote for 30 days next preceding an election." *Id.*; *see also* N.C. Const. art. VI, § 2, para. 1.

23. North Carolina applies this Durational Residency Requirement to all registering voters uniformly with no exceptions.

24. In order to register to vote, voters must attest to meeting this residency requirement on their registration forms.

25. North Carolina's voter registration form requires registrants to sign and attest "under penalty of a Class I felony" that they meet each of the state's voting eligibility requirements. N.C. Gen. Stat. § 163-82.4(c)(1); *see also id.* § 163-275(13) (making it a Class I felony "[f]or any person falsely to make or present any certificate or other paper to qualify any person fraudulently as a voter").

26. State law does not allow any voter to forgo these attestations at any stage of the registration process, or for any election.

27. And while the North Carolina Constitution provides that "[t]he General Assembly may reduce the time of residence for persons voting in presidential elections," N.C. Const. art. VI, § 2, North Carolina has repealed the law that once exempted presidential and vice-presidential elections from the ambit of the Durational Residency Requirement. *See* N.C. Gen. Stat. § 163-56 ("A person who has been a resident for this State for not less than sixty days immediately prior to the date of a presidential election shall be entitled to register and vote for presidential and vice-presidential electors in such election but for no other offices, provided he is then qualified to register and vote in this State except for the fact that he has not resided in this State for one year prior to the election," repealed by Laws 1973, c. 793, § 19).

## II. Otherwise eligible North Carolina voters who just moved to the state and intend to stay in the state indefinitely must be allowed to vote in all federal elections affecting them in their new home.

28. The Durational Residency Requirement prevents otherwise qualified voters from registering and voting. North Carolina voters who miss the normal registration deadline may register to vote through same-day registration, which begins 20 days before the election at the start of the early voting period and ends the Saturday before election day. *See id.* § 163-227.2(b).

29. During this time, eligible North Carolinians can register to vote in person as well as cast their ballots on the same day at an early voting site. *See id*.

30. In order to register, same-day registrants must complete the standard North Carolina voter registration application, which requires registrants to attest, under penalty of perjury, that they have, among other requirements, been a resident of North Carolina and their county and precinct for at least 30 days before the date of the election in which they intend to vote. *See supra* ¶¶ 24–26.

31. However, if a registrant moves to North Carolina within 30 days of election day and establishes a "fixed" habitation "to which, whenever that person is absent, that person has the intention of returning," N.C. Gen. Stat. § 163-57 (defining "residence" for registration and voting), the registrant still cannot satisfy the state's Durational Residency Requirement. They also cannot truthfully make the required attestations to register to vote. *See supra* ¶¶ 24–26.

32. Thus, even though North Carolina affords some new voter registrants the opportunity to register to vote within 20 days of election day, North Carolina residents who move into the state within 30 days of election day are prevented from voting solely because of the state's Durational Residency Requirement.

**III. Under the VRA, states may not deny otherwise qualified voters the right to vote in presidential elections based on the duration they have resided in that state.**

33. Section 202 of the VRA Amendments of 1970 "completely abolish[es] the durational residency requirement as a precondition to voting for President and Vice President" and states that otherwise qualified voters may not "be denied the right to vote for electors for President and Vice President, or for President and Vice President, in such election because of the failure of such citizen to comply with any durational residency requirement of such State or political subdivision." 52 U.S.C. § 10502(b), (c).

34. North Carolina law constitutes a durational residency requirement that serves as a precondition to voting for President and Vice President, in direct violation of Section 202.

35. Unlike some other states, North Carolina law does not provide any exception to the state's Durational Residency Requirement for voters who intend to vote in a presidential and vice presidential election. *See, e.g.*, N.Y. Elec. Law § 5-102(2) ("The provisions herein with respect to a durational residency requirement for purposes of qualifying to vote shall not prohibit United States citizens otherwise qualified, from voting for president and vice president of the United States."); Nev. Rev. Stat. § 298.259(1) ("If a new resident of the State of Nevada otherwise qualified to vote in another state in any election for President and Vice President of the United

States has commenced his or her residence in this State after the 30th day next preceding that election and for this reason does not satisfy the requirements for registration in this State, the new resident may vote for President and Vice President in this State.").

36. Section 202 prohibits states from requiring voters to attest to their residency status as a precondition for registering to vote because doing so would deny a U.S. citizen "who is otherwise qualified to vote" in North Carolina "the right to vote for electors for President and Vice President, or for President and Vice President . . . because of the failure of such citizen to comply with any durational residency requirement of such State or political subdivision." 52 U.S.C. § 10502(c).

37. The VRA does allow imposition of a 30-day pre-election registration cutoff, even in presidential elections. *Id.* § 10502(d). And voters who do "not satisfy the *registration requirements* of" a new state of residence may vote for president and vice president in their prior state of residence. *Id.* § 10502(e) (emphasis added). But those provisions do not apply to the Durational Residency Requirement, because it is not a 30-day pre-election *registration* cut off, and because North Carolina does not impose such a cutoff. Rather, voters who could otherwise register and vote within 30 days of a presidential and vice presidential election are prohibited from doing so solely because they have not lived in the state for long enough before the election. That is precisely what Section 202 of the VRA prohibits.

**IV. The U.S. Constitution also prohibits states from denying the right to vote to otherwise qualified voters who do not satisfy the Durational Residency Requirement.**

38. Durational residency requirements such as North Carolina's "completely bar from voting all residents not meeting the fixed durational standards." *Dunn*, 405 U.S. at 336.

39. The Durational Residency Requirement "den[ies] . . . the right to vote" to citizens who move to North Carolina in time for same-day voter registration, but within 30 days of an election, "deprive[s] them of 'a fundamental political right, . . . preservative of all rights,'" and "directly impinge[s] on" the right to interstate travel. *Id.* at 336, 338 (quoting *Reynolds v. Sims*, 377 U.S. 533, 562 (1964)).

40. To be sure, states may establish criteria for what makes a voter a bona fide *state resident* for voting. *See id.* at 349–51; *see also* N.C. Gen. Stat. § 163-57 (defining "residence" for purpose of voting and as "that place. . . in which that person's habitation is fixed, and to which, whenever that person is absent, that person has the intention of returning").

41. But unlike this straightforward, forward-looking residency definition that turns on where a voter intends to make their home in the future, the additional backward-looking Durational Residency Requirement "penalize[s] those persons who have traveled from one place to another" by "divid[ing] residents into two

- 14 -

Case 1:23-cv-00837-WO-JLW   Document 1   Filed 10/02/23   Page 14 of 20

classes, old residents and new residents, and discriminat[ing] against the latter to the extent of totally denying them the opportunity to vote." *Dunn*, 405 U.S. at 334-35.

42. States may also constitutionally impose pre-election *registration* cutoffs where "necessary to permit preparation of accurate voter lists." *Marston*, 410 U.S. at 681. If a state's durational residency requirement coincides with its constitutional registration deadline, a voter would not be independently injured by the residency requirement because they would also be unable to register before the state's predetermined deadline. *See id.* at 680 (declining to strike down retrospective durational residency requirement where it was tied to "closing of the State's [voter] registration process").

43. But unlike in *Marston*, North Carolina voters *are injured* by the Durational Residency Requirement. While there is a statutory mechanism through which a voter can register to vote up to the Saturday before election day, that mechanism affords no relief to new residents of North Carolina: Applicants who move into the state within 30 days of the election are unable to avail themselves of these same-day registration processes solely because they have moved to the state too recently.

44. There is no legitimate state interest furthered by the Durational Residency Requirement, let alone a compelling and substantial one, so the law cannot withstand constitutional scrutiny. *Dunn*, 405 U.S. at 341, 358-60.

# CLAIM FOR RELIEF

## COUNT I
### Voting Rights Act Section 202
### 52 U.S.C. § 10502; 42 U.S.C. § 1983; 28 U.S.C. §§ 2201, 2202

45. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 45 as though fully set forth herein.

46. During the 1970 amendment of the VRA, Congress identified several findings about "the imposition and application of the durational residency requirement as a precondition to voting for the offices of President and Vice President, and the lack of sufficient opportunities for absentee registration and absentee balloting in presidential elections." 52 U.S.C. § 10502(a).

47. In particular, Congress found that such requirements deny or abridge voters' inherent constitutional right to vote for their President and Vice President, their right to free movement across State lines, and equality of civil rights, and due process and equal protection of the laws guaranteed under the Fourteenth Amendment. Congress also found that such requirements do not "bear a reasonable relationship to any compelling State interest in the conduct of presidential elections." 52 U.S.C. § 10502(a)(6).

48. Codifying these findings, Section 202(b) of the VRA Amendments of 1970 provides:

> Congress declares that in order to secure and protect the above-stated rights of citizens under the Constitution, to enable citizens to better

obtain the enjoyment of such rights, and to enforce the guarantees of the fourteenth amendment, it is necessary (1) to completely abolish the durational residency requirement as a precondition to voting for President and Vice President . . . .

52 U.S.C. § 10502(b).

49. Section 202(c) of the VRA Amendments of 1970 further provides, in relevant part:

No citizen of the United States who is otherwise qualified to vote in any election for President and Vice President shall be denied the right to vote for electors for President and Vice President, or for President and Vice President, in such election because of the failure of such citizen to comply with any durational residency requirement of such State or political subdivision . . . .

52 U.S.C. § 10502(c).

50. The Durational Residency Requirement violates Section 202 of the VRA by conditioning a voter's eligibility to vote on whether that voter has been in the state for a certain period of time before election day. *See* N.C. Gen. Stat. § 163-55(a); N.C. Const. art. VI, § 2, para. 1.

51. The Durational Residency Requirement denies U.S. citizens "who [are] otherwise qualified to vote" in North Carolina "the right to vote for electors for President and Vice President, or for President and Vice President" solely because they do not "comply with any durational residency requirement of such State or political subdivision." 52 U.S.C. § 10502(c).

52. For these reasons, the Durational Residency Requirement, and any related attestations related to a voter's residency status, must be enjoined from enforcement with regard to any election for President and Vice President.

## COUNT II
### First and Fourteenth Amendments
### U.S. Const. Amend. I and XIV; 42 U.S.C. § 1983, 28 U.S.C. §§ 2201, 2202

53. Plaintiff realleges and incorporates by reference paragraphs 1 through 52 as though fully set forth herein.

54. The U.S. Supreme Court has invalidated laws like the Durational Residency Requirement on the grounds that such laws unduly burden the right to vote and "penalize those persons who have traveled from one place to another to establish a new residence during the qualifying period." *Dunn*, 405 U.S. at 334.

55. Laws like the Durational Residency Requirement "divide residents into two classes, old residents and new residents, and discriminate against the latter to the extent of totally denying them the opportunity to vote." *Id.* at 334–35.

56. "By denying some citizens the right to vote," the Durational Residency Requirement "deprive[s] them of 'a fundamental political right, . . . preservative of all rights.'" *Id.* at 336 (quoting *Reynolds*, 377 U.S. at 562).

57. Because it implicates a fundamental right, the Durational Residency Requirement is constitutional "only upon a clear showing that the burden imposed

- 18 -

Case 1:23-cv-00837-WO-JLW   Document 1   Filed 10/02/23   Page 18 of 20

is necessary to protect a compelling and substantial governmental interest." *Id.* at 340–41 (internal quotations omitted).

58. The Durational Residency Requirement is not necessary to protect a compelling and substantial governmental interest. *See id.* at 343–44, 352, n.22 (distinguishing interests served by voter registration deadline, and a forward-looking residency requirement, from interests served by backward-looking durational residency requirement).

59. For these reasons, and in accordance with the Supreme Court's holding in *Dunn v. Blumstein*, North Carolina state law violates the First and Fourteenth Amendments of the United States Constitution.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment:

a) Declaring that Defendants have violated Section 202 of the Voting Rights Act and the First and Fourteenth Amendments to the U.S. Constitution;

b) Permanently enjoining Defendants and their respective agents, officers, employees, and successors, and all persons acting in concert with each or any of them, from enforcing the Durational Residency Requirement, such as by including the Durational Residency Requirement on the voter registration form or by denying any voter the ability to vote on the basis of their failure to have resided in the state, county, or precinct of North Carolina for a minimum of 30 days before the date of the election;

c) Awarding Plaintiff its costs, disbursements, and reasonable attorneys' fees incurred in bringing this action pursuant to 42 U.S.C. § 1988 and other applicable laws; and

d) Granting such other and further relief as the Court deems just and proper.

Dated: October 2, 2023.	Respectfully submitted,

/s/ Narendra K. Ghosh
Narendra K. Ghosh
N.C. Bar No. 37649
PATTERSON HARKAVY LLP
100 Europa Drive, Suite 420
Chapel Hill, NC 27217
Telephone: (919) 942-5200
nghosh@pathlaw.com

David R. Fox*
Alexi M. Velez*
Marilyn Gabriela Robb*
Tina Meng Morrison*
ELIAS LAW GROUP LLP
250 Massachusetts Ave, N.W., Suite 400
Washington, D.C. 20001
Telephone: (202) 968-4490
dfox@elias.law
avelez@elias.law
mrobb@elias.law
tmengmorrison@elias.law

*Notices of Special Appearance Forthcoming*

*Counsel for Plaintiff*